PARKING AUTHORITY OF RIVER CITY, INC., Appellant

v.

BRIDGEFIELD CASUALTY INSURANCE COMPANY, Appellee

NO. 2014–CA–001610–MR

Court of Appeals of Kentucky.

RENDERED: NOVEMBER 6, 2015; 10:00 A.M.

BRIEFS FOR APPELLANT: Michael J. O'Connell, Jefferson County Attorney, Stephanie A. French, Assistant County Attorney, Louisville, Kentucky

BRIEF FOR APPELLEE: A.C. Donahue, Somerset, Kentucky

BEFORE: DIXON, D. LAMBERT, AND THOMPSON, JUDGES.

*OPINION*

DIXON, JUDGE:

Appellant, Parking Authority of River City, Inc. (PARC), appeals from an order of the Jefferson Circuit Court denying its motion to dismiss and finding that it is not entitled to immunity in a personal injury lawsuit brought by an individual injured while on PARC's premises. Finding no error, we affirm.

On February 27, 2012, Sandy Fackler sustained an injury when she slipped and fell on property that was operated under the authority of PARC. At the time of her injury, Fackler was on business for her employer, Robert H. Clarkson Insurance Agency, LLC. On February 15, 2013, Appellee, Bridgefield Casualty Insurance Company initiated the current litigation against PARC claiming that it was entitled to recover damages in the amount that it paid in benefits to Fackler on behalf of Clarkson, its insured.

On April 4, 2014, PARC filed a motion to dismiss all of Bridgefield's claims for failure to state a claim upon which relief can be granted. Therein, PARC argued that it was insulated from liability based upon the doctrine of sovereign immunity. Specifically, PARC contended that because it is an agent of Louisville Metro Government, and Louisville Metro is a political subdivision of the state afforded immunity, PARC was also entitled to immunity. By opinion and order entered on September 4, 2014, the trial court denied PARC's motion. Therein, the trial court concluded that although PARC met its burden of showing that it qualified as a governmental entity entitled to the protections of sovereign immunity absent an explicit statutory waiver, Kentucky Revised Statutes (KRS) 67A.920 waived that immunity by allowing PARC to be sued. PARC thereafter appealed to this Court.

A motion to dismiss should only be granted if "it appears the pleading party would not be entitled to relief under any set of facts which could be proved[.]" *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky.2010) (citation omitted). The pleadings should be liberally construed so that all allegations are taken as true. *Mims v. Western–Southern Agency, Inc.*, 226 S.W.3d 833, 835 (Ky.App.2007). Since a motion to dismiss for failure to state a claim upon which

relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue *de novo*.

Kentucky law distinguishes between sovereign immunity and governmental immunity and, as a result, draws a distinction between the protections afforded state and county governments as opposed to those afforded governmental agencies or entities. The Commonwealth and its counties are entitled to sovereign, or absolute, immunity from suit, absent an express consent or waiver. *Comair, Inc. v. Lexington–Fayette Urban County Airport Corp.*, 295 S.W.3d 91, 94 (Ky.2009). A merged urban-county government, such as Louisville Metro, is a classification of county government that is likewise afforded sovereign immunity. *Lexington–Fayette Urban County Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky.2004).

Governmental immunity, on the other hand, is a derivative of sovereign immunity and is granted to qualified governmental agencies or entities. The test for whether an entity qualifies for governmental immunity is two-pronged. *Comair*, 295 S.W.3d at 99. The court must first examine the origin, or "parent," of the entity to determine if the entity is an agency (or alter ego) of a clearly immune parent. *Id.* Second, the court must assess whether the entity performs a "function integral to state government." *Id.* (Quoting *Kentucky Center for the Arts Corp. v. Berns*, 801 S.W.2d 327, 332 (Ky. 1990)). The rationale for this showing is that sovereign immunity "should extend ... to departments, boards or agencies that are such integral parts of state government as to come within regular patterns of administrative organization and structure." *Id.* (citation omitted). Examples of state level governmental concerns include police, public education, corrections, tax collection, and public highways. *Id.* Conversely, entities performing proprietary functions and/or addressing purely local concerns do not qualify for the protections of governmental immunity. *Id.* at 99–100. As noted by our Supreme Court in *Comair*, "both of these inquiries—the sources of the entity in question and the nature of the function it carries out—are tied together to the extent that frequently only an arm of the state can exercise a truly integral governmental function (whereas municipal corporations tend to exercise proprietary functions addressing purely local concerns)." *Id.* at 99–100.

Recently, in *Transit Authority of River City v. Bibelhauser*, 432 S.W.3d 171, 173 (Ky.App.2013), a panel of this Court addressed the issue of whether TARC was entitled to immunity from an underlying negligence action filed by an individual injured when he was struck by a TARC bus. The trial court had denied TARC's motion for partial summary judgment on immunity grounds. On appeal, TARC first claimed it was entitled to sovereign immunity by virtue of KRS 67C.101(2)(e), which affords a consolidated local government such as Louisville Metro the same sovereign immunity as counties, their agencies, officers and employees, as well as KRS 96A.020, which governs a transit authority's creation and existence. In rejecting TARC's claim of sovereign immunity, this Court concluded:

These statutes do not afford TARC sovereign immunity. KRS 96A.020(1) clearly states that TARC is "a public body corporate" with the power "to sue and be sued" and "to have and exercise, generally, all of the powers of private corporations...." In *Gross v. Ky. Bd. Of Managers*, 105 Ky. 840, 49 S.W. 458, 459 (1899), the court addressed a similar

issue and held that, while the Kentucky Board of Managers was an agency of the state, ... the [ ] Board could be sued for its corporate acts, just like any other corporation, and its contracts were its obligation, not that of the state. *Id.* As in *Gross,* TARC's authority is more corporate than governmental. Thus, its actions are not cloaked in sovereign immunity.

*Bibelhauser,* 432 S.W.3d at 173–174.

The *Bibelhauser* Court similarly rejected TARC's claim that it was entitled to governmental immunity. Applying the *Comair* test, this Court found that TARC satisfied the first prong in that it is an agency of Louisville Metro, which is an entity immune from suit. However, with respect to whether TARC's mass transportation services constituted a proprietary function serving the local Louisville Metro area, as the trial court found, or a governmental function as required by *Comair,* the Court explained,

> TARC must show that it addresses "state level governmental concerns that are common to all of the citizens of this state...." Serving "purely local" concerns is insufficient. Second, TARC must show that it serves a function that is "integral" to addressing that state level concern. To qualify as "integral," TARC's actions "must be necessary, an essential part of carrying out that state-level government function." In other words, without TARC performing its function, the state-level concern would not be fully addressed. (Citations omitted).

> The record shows that TARC engages in a quintessentially local propriety venture, i.e., providing transportation services, just like other for-profit taxi and bus services in the Louisville Metro area.

... It does not provide a transportation infrastructure, facilitate state-wide transit, legislate, administrate, or otherwise predominately serve state-level concerns or carry out functions "integral to state government." Its services are truly local and proprietary in nature. Thus TARC has failed to meet the second prong of the *Comair* test and the trial court properly denied its motion for summary judgment on grounds of immunity.

*Bibelhauser,* 432 S.W.3d at 174–175.

■ We are of the opinion that *Bibelhauser* is dispositive of the matter herein. PARC was created pursuant to KRS 67A.914, which provides:

> The local legislative body of any county governed under urban-county statutes may, by resolution, create and establish an agency to be known by the name of the largest city in such county and the name of the county itself, separated by the word "and" and the words "parking authority." That agency shall exist for each urban-county government with the powers, duties, and functions as hereinafter provided.

Further, KRS 67A.920 provides in pertinent part:

> (1) Each parking authority created under the authority of KRS 67A.914 shall constitute a public body, corporate and politic, and shall have the following powers in addition to the others granted:

> (a) To sue and be sued; to have a seal; to make and execute contracts and other instruments necessary or convenient to the exercise of its powers;

> ....

> (h) To contract with any suitable and qualified person, firm or corporation for construction or for operation of

any parking facility or structure as is found to be in the public interest[.] In comparing the statutes governing PARC with those governing TARC as discussed in *Bibelhauser*, it is clear that the legislative language and intent is the same in both. We conclude, as did the *Bibelhauser* Court with respect to TARC, that PARC's authority and actions are more corporate than governmental. Thus, PARC is not entitled to sovereign immunity.

Similarly, we believe that PARC has not satisfied both prongs of the *Comair* test so as to be entitled to governmental immunity. As the trial court herein noted, PARC has met its burden of showing that it qualifies as a government entity as it is an agency of Louisville Metro which is, in fact, immune from suit. However, as TARC was unable to do in *Bibelhauser*, PARC cannot demonstrate that it fulfills a function integral to state government. PARC provides fourteen (14) garages and six (6) municipal lots in the Metro area for a total of twenty (20) parking facilities. However, numerous other companies provide the exact same services in the Metro area. We must agree with Bridgefield that these for-profit companies that are specifically in the business of providing parking spaces render invalid PARC's claim that it serves a function that is integral to addressing a state level concern. Such is confirmed by the language of Louisville Metro Code of Ordinances § 32.501, entitled "PARC Purpose and Powers," which states that "PARC may develop a long-range parking strategy for public parking in the Central Business District and other areas within Louisville Metro." LMCO § 32.501(3). Clearly, PARC engages in a "quintessentially local proprietary venture," i.e., providing parking for the Louisville Metro area. *Bibelhauser*, 432 S.W.3d at 174.

In an attempt to distinguish *Bibelhauser*, PARC argues that it is more akin to the Airport Board that was at issue in *Comair* rather than TARC because it provides infrastructure to facilitate statewide transit. We disagree. It is clear from the Court's analysis in *Comair* that the Airport Board is distinctly different from PARC:

> The Airport Board also carries out a function integral to state government in that it exists solely to provide and maintain part of the Commonwealth's air transportation infrastructure (i.e., the airport). The statutory purpose of airport boards is "to establish, maintain, operate, and expand necessary, desirable or appropriate airport and air navigation facilities," and they "shall have the duty and such powers as may be necessary, or desirable to promote and develop aviation, including air transportation, airports and air navigation facilities." KRS 183.133(1). As argued by the Board and Corporation, this function is, in many ways, analogous to the provision of county roads and state highways. Though the analogy is imperfect, since the Airport Board does not own or maintain the airways themselves (an impossibility, actually), it is sufficient because the board, by providing the airport, provides the primary means for accessing those airways, which in turn are essential for commercial and private transportation of people, cargo, and mail.

> . . . .

> Comair argues that the Airport Board is "engaged in a proprietary venture, i.e., transportation." This, however, imputes too much function and activity to the Board, which does not actually provide transportation services, for example, by operating an airplane to transport people. Instead, it provides the runways, terminals, and other infra-

structure that private airline companies like Comair use (admittedly for a fee) to provide those transportation services. Comair's reasoning is akin to saying that the Transportation Cabinet is engaged in the business of transportation because it facilitates private and commercial transportation (e.g., by trucking companies) by building roads and highways (and even charges a fee for their use at times with toll booths). But the Cabinet (like the Board) is actually in the "business" of providing transportation infrastructure, which is a quintessential state concern and function, one that is very different from the business of transportation itself.

*Comair,* 295 S.W.3d at 101–102.

PARC is not the sole, or even predominant, provider of parking in Louisville. It certainly does not provide the primary means by which people travel or cargo is moved throughout the Commonwealth. PARC merely provides a portion of parking in the Metro area, a function that must be equated to a local proprietary venture rather than that integral to state government. As such, just as TARC failed to meet the second prong of the *Comair* test in *Bibelhauser,* PARC also fails in its attempt herein. Accordingly, PARC is not entitled to governmental immunity and is not immune from liability in the action herein.

For the reasons set forth herein, the order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.