NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0585n.06

No. 19-5397

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DUSTIN AYALA,

    Plaintiff-Appellee,

v.

MICHAEL HOGSTEN, in his Individual and
Official Capacities as Greenup County Deputy
Sheriff; GREENUP COUNTY SHERIFF OFFICE,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Dec 02, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

Before: GILMAN, KETHLEDGE, and READLER, Circuit Judges.

KETHLEDGE, Circuit Judge. Deputy Sheriff Michael Hogsten and the Greenup County Sheriff's Office appeal the district court's denial of qualified immunity on plaintiff Dustin Ayala's civil-rights suit. We affirm.

I.

We take the facts in the light most favorable to Ayala unless they are clearly contradicted by video. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007). We have a video here. In May 2016, Hogsten went to Ayala's mobile home in Greenup County, Kentucky, to serve him with a court order. Hogsten banged on the front door, but no one answered. Ayala had been in bed, but got up and started to dress when he heard the noise. He peeked out of the window, saw a deputy at the door, and told his girlfriend to get her cell phone and start filming. Ayala thought he heard the deputy trying to turn the front-door handle; then he heard the same sound at the back door. By that time, Ayala was dressed. He stepped out onto his front porch and called out to Hogsten.

Hogsten came back to the front of the home and handed Ayala the court order. The cell phone video starts there. For the first 8 seconds, it shows the two men shouting profanities at each other, with Ayala standing on a porch about three feet above the ground, and Hogsten a few feet away, at the bottom of several porch steps. Ayala accused Hogsten of trying to enter the mobile home and yelled at him to leave; Hogsten cursed right back and told Ayala to "come down here boy." Ayala continued to swear and appeared to point or wave his hand towards Hogsten several times. At the 8-second mark, Hogsten told Ayala that he was under arrest for "menacing"; at the same time, he sprayed Ayala in the face with two bursts of pepper spray. Hogsten told Ayala to put his hands behind his back, which he did without protest. Then, without handcuffing Ayala, Hogsten took him off the porch, across a driveway, and into the backseat of a cruiser.

The local district attorney charged Ayala with menacing, a state-law misdemeanor. A jury acquitted him. Ayala then sued Hogsten and the Sheriff's Office under 42 U.S.C. § 1983 and state law, alleging among other things that his arrest had been unlawful and that Hogsten had used excessive force, both in violation of the Fourth Amendment. Hogsten and the Sheriff's Office moved for summary judgment on those claims based on qualified immunity. The district court denied their motion. This appeal followed.

We review de novo the denial of qualified immunity. *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010). An officer is entitled to qualified immunity unless his conduct violated a constitutional right that was clearly established at the time. *See Scott*, 550 U.S. at 377–78.

Hogsten argues that he had probable cause to arrest Ayala and is therefore entitled to qualified immunity on Ayala's unlawful-arrest claim. Probable cause is "reasonable grounds for belief" that a crime has been committed. *United States v. Padro*, 52 F.3d 120, 122–123 (6th Cir. 2013). Hogsten says he had probable cause to arrest Ayala for "menacing," which a person

commits "when he intentionally places another person in reasonable apprehension of imminent physical injury." Ky. Rev. Stat. Ann. § 508.050. Hogsten says he had that kind of fear because of Ayala's elevated position on the porch and his cursing and hand-waving. But the video arguably shows otherwise: Ayala was unarmed, the two men were not within reach of each other, and Hogsten himself called for Ayala to "come down here boy." A jury could therefore find that Hogsten was never in "apprehension of imminent physical injury" and thus lacked probable cause to arrest Ayala for menacing.

Hogsten also argues that he was entitled to qualified immunity on Ayala's excessive-force claim. The Fourth Amendment protects citizens from excessive force by an arresting officer. *See Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). Accordingly, an officer may not use pepper spray on a "detainee who has been subdued, is not told he is under arrest, or is not resisting arrest." *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009). Here, the video shows that Hogsten pepper-sprayed Ayala at the same time Hogsten arrested him. Thus, Ayala lacked any opportunity to resist arrest before Hogsten sprayed him. And the district court found that "there is no evidence that [Ayala] was behaving in an aggressive, threatening way[.]" R. 40 at Page ID 373. Taken in the light most favorable to Ayala, the facts therefore show that Hogsten's use of pepper spray was excessive.

Hogsten and the Sheriff's Office say they are also entitled to qualified immunity on Ayala's other state and federal claims; but as to those claims their motion for summary judgment did not present even a "minimal level of argumentation" that would preserve those issues for appeal. *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009). And this is not the rare case where a failure to address arguments raised for the first time on appeal would result in a manifest injustice. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 615 (6th Cir. 2014).

Finally, the Sheriff's Office says that it has official immunity from Ayala's state-law claims. But Kentucky law explicitly provides that sheriffs' offices are not immune for acts committed by their deputies. Ky. Rev. Stat. Ann. § 70.040; *see Jones v. Cross*, 260 S.W.3d 343, 346 (Ky. 2008). Hogsten was a deputy of the Greenup County Sheriff's Office, so that law applies here.

The district court's judgment is affirmed.